## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH M. ZIELINSKI, JR., and<br>JOANNE T. ZIELINSKI,<br>        *Plaintiffs*<br><br>v.<br><br>CITIZENS BANK N.A.,<br>        *Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>DEFENDANT CITIZENS BANK N.A.'s ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Defendant Citizens Bank, N.A. ("Citizens"), by and through its attorneys, denies that Plaintiffs are entitled to any of relief requested in the Complaint and answers as follows:

## <u>AS TO PARTIES</u>

1.      The Plaintiffs, Joseph M. Zielinski, Jr. and Joanne T. Zielinski (collectively, the "Plaintiffs" or the "Zielinskis") are a married couple who currently reside at 135 Pleasant Street Rear, Apartment 307, Berlin, Worcester County, Massachusetts.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to Plaintiffs' marital status or residence.**

2.      Citizens Bank, N.A., is national banking association with headquarters at One Citizens Plaza, Providence, Rhode Island 02903 ("Citizens Bank"). Citizens Bank is a subsidiary of Citizens Financial Group, Inc.

**RESPONSE: Admitted.**

## AS TO JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over this proceeding pursuant to G.L. c. 93A, § 9(1) and G.L. c. 212, § 4.

**RESPONSE: Admitted.**

4.     The Court has personal jurisdiction over Citizens Bank under G.L. c. 223A, § 3 (a)-(d), the Massachusetts long-arm statute, because it maintains branch offices in Massachusetts, regularly transacts business in Massachusetts, has caused tortious injury by acts or omissions in Massachusetts, and/or has caused tortious injury in Massachusetts by acts or omissions outside of Massachusetts.

**RESPONSE: Admitted.**

5.     Venue is proper in this Court and in Worcester County pursuant to G.L. c. 223, §1, because the Plaintiffs are domiciled in Worcester County.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to Plaintiffs' domicile.**

## FACTS COMMON TO ALL CLAIMS

6.     In 1986, the Zielinskis purchased a home located at 184 Summer Street in Maynard, Massachusetts, taking title jointly as tenants by the entirety.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to Plaintiffs' purchase of property or the nature of the title.**

7.     On September 9, 2003, the Zielinskis refinanced their then-existing mortgage loans by taking out a new first mortgage loan in the amount of $200,000.00 (the "First Mortgage") with Citizens Bank of Massachusetts, as mortgagee. The First Mortgage was

recorded on October 9, 2003, in the Middlesex South Registry of Deeds in Book 41151, Page 546.

**RESPONSE: Admitted.**

8.    That same day, the Zielinskis took out a home equity line of credit with Citizens Bank of Massachusetts (the "HELOC"), as mortgagee, which had a maximum credit line of $50,000.00. The HELOC was recorded in the Middlesex South Registry of Deeds on February 20, 2007, in Book 49009, Page 555, more than three years after it was issued.

**RESPONSE: Admitted, except as to any characterizations set forth in this paragraph.**

9.    On March 12, 2008, the Zielinskis entered into a Loan Workout Modification Agreement (the "Modification Agreement") with RBS Citizens, N.A. ("RBS"). The Modification Agreement was recorded on November 3, 2008, in the Middlesex Registry of Deeds in Book 51859, Page 530. A copy of the Modification Agreement is attached as Exhibit 1.

**RESPONSE: Admitted.**

10.    The Modification Agreement states that RBS was formerly known as Citizens Bank of Massachusetts. There are no assignments of the First Mortgage recorded in the Middlesex South Registry of Deeds. For these reasons, the Plaintiffs are informed and believe that RBS acquired the First Mortgage and/or the HELOC from Citizens Bank of Massachusetts at some point between the date the loans were issued and the date on which the Modification Agreement was executed.

**RESPONSE: Admitted that RBS Citizens N.A. was the proper party to execute the Modification Agreement as of March 12, 2008.**

11.     In 2015, RBS divested its ownership interest in Citizens Bank's parent company, Citizens Financial Group, Inc. The Plaintiffs are informed and believe that Citizens Bank thereafter acquired ownership of the First Mortgage and HELOC as a result.

**RESPONSE: Admitted that Citizens Bank was the lender of record with respect to the First Mortgage and HELOC.**

12.     At some point after the Modification Agreement was executed, Citizens One Home Loans ("Citizens One") took over the servicing of the First Mortgage. Citizens One is a division of Citizens Bank and was performing servicing duties for Citizens Bank which owned the First Mortgage. All references herein to Citizens One shall include Citizens Bank.

**RESPONSE: Admitted that Citizens One retained servicing duties with respect to the First Mortgage.**

13.     As part of its servicing duties, Citizens One sent monthly mortgage statements to the Zielinskis, collected and processed loan payments from the Zielinskis, managed their mortgage escrow account, and provided loss mitigation services to the Zielinskis as described below.

**RESPONSE: Admitted only that Citizens One performed the regular duties of a loan servicer.**

14.     The Zielinskis fell behind on the payments on their First Mortgage due to medical and financial problems.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to the reasons why Plaintiffs defaulted on their loan.**

15.     Hoping to keep their home and avoid foreclosure, the Zielinskis sought mortgage relief and assistance from Citizens Bank through Citizens One.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to why Plaintiffs sought mortgage relief and assistance from Citizens Bank through Citizens One.**

16.     In response to their request for relief and assistance, the Zielinskis received two letters from Citizens One dated October 2, 2015.

**RESPONSE: Admitted.**

17.     The first of these letters informed the Zielinskis that they would not be considered for mortgage relief under a then-existing federal program known as the Home Affordable Foreclosure Alternatives Program (HAFA) because they had failed to "respond to the solicitation letter in 14 days." That statement is inaccurate, The Zielinskis had responded within 14 days. A copy of this letter is attached as Exhibit 2.

**RESPONSE: Denied.**

18.     The second letter dated October 2, 2015, states that Citizens One was looking forward "to working with [the Zielinskis] to identify a possible solution for [their] mortgage delinquency". The letter instructed the Zielinskis to return "the complete Borrower Response Package by November 1, 2015" to an address in Glen Allen, Virginia. A copy of this letter is attached as Exhibit 3.

**RESPONSE: Citizens states that the letter attached as Exhibit 3 speaks for itself, and denies any characterizations set forth in this paragraph.**

19.     These two letters (Exhibits 2 and 3) contain confusing, misleading and contradictory statements. While the first letter notified the Plaintiff that they would not be considered for or granted mortgage relief, the second letter invited them to apply for relief and implied they were eligible for relief.

**RESPONSE: Denied.**

20.     On October 14, 2015, the Zielinskis faxed the complete "Borrower Response Package" to Citizens One. The fax included all of the documents that Citizens One requested in the second October 2nd letter (Exhibit 3).

**RESPONSE: Denied.**

21.     The documents were faxed to Citizens One two weeks before the November 1st deadline stated in the letter.

**RESPONSE: Denied.**

22.     The following day (October 15, 2015), Citizens One again sent two different letters to the Zielinskis.

**RESPONSE: Admitted.**

23.     The first of these letters acknowledged that Citizens One had "received [the Zielinskis'] request for Loan Mitigation assistance - including your financial package - and we are in the process of reviewing your documentation." The letter states it was sent by Monique Goodine, Relationship Manager. A copy of the letter is attached as Exhibit 4.

**RESPONSE: Admitted, except as to any characterizations set forth in this paragraph.**

24.     The second letter of October 15th - also from Monique Goodine - begins by stating, "[recently], we received your request for information regarding Foreclosure Prevention options." The letter then promises that Citizens One "will explore foreclosure programs that may be available to you. A copy of the letter is attached as Exhibit 5.

**RESPONSE: Admitted, except as to any characterizations set forth in this paragraph.**

25.     The two October 15th letters also contain confusing, misleading and contradictory statements. The first letter (Exhibit 4) acknowledges that Citizens One received the Zielinskis' documentation and was in the process of reviewing their request for assistance. The second letter (Exhibit 7) does not mention that the review process that was supposedly underway and states or implies that the Zielinskis would be considered for different types of mortgage assistance.

**RESPONSE: Denied.**

26.     On October 20, 2015, Citizens One sent a letter to the Zielinskis stating that it had reviewed their "application requesting assistance", but that the application was incomplete. That statement is inaccurate. The Zielinskis had previously faxed Citizens One all of the documents it had requested in its October 2nd letter (Exhibit 3) which the letter referred to as "the *complete* Borrower Response Package" (emphasis added). A copy of the October 20th letter is attached as Exhibit 6.

**RESPONSE: Denied.**

27.     The October 20th letter (Exhibit 6) lists additional documents that Citizens One wanted the Zielinskis to provide, including bank statements for the two most recent months and a copy of their 2014 tax return.

**RESPONSE: Admitted.**

28.     On November 4, 2015, the Zielinskis faxed the additional documents requested by Citizens One in its October 20th letter (Exhibit 6).

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to the date that the Plaintiffs faxed the requested documents.**

29.     On November 6, 2015, Citizens One sent a letter to the Zielinskis which begins by stating, "[w]e received your *complete* Borrower Response Package. We are currently reviewing

your file and we will make a final determination within the next thirty (30) days (emphasis added)." The letter is also from by Monique Goodine, Relationship Manager. A copy of the November 6th letter is attached as Exhibit 7.

**RESPONSE: Admitted, except as to any characterizations set forth in this paragraph.**

30.    This same pattern repeated itself over the next several months. Citizens One repeatedly denied receiving documents the Zielinskis had already submitted, forcing them to resubmit the same documents multiple times.

**RESPONSE: Denied.**

31.    During this time period, Mrs. Zielinski spent long hours on the telephone trying to notify Citizens One that Citizens One was asking the Zielinskis to send documents they had already submitted.

**RESPONSE: Denied.**

32.    During these telephone calls, Mrs. Zielinski was repeatedly transferred from one department to another and spent long periods of time on hold. Many of the calls ended with Citizens One terminating the call before Mrs. Zielinski could speak to someone who was familiar with their' application for mortgage relief. Citizens One was generally non-responsive or unreachable.

**RESPONSE: Denied.**

33.    Citizens One ultimately refused to modify the Zielinskis' First Mortgage loan. In a letter to the Zielinskis dated January 22, 2016, Citizens One described the types of relief and assistance it had and had not considered and stated the reasons why it refused to grant each type of relief. The types of relief and assistance that Citizens One claims to have considered the

Zielinskis for included a loan modification under a then-existing federal program known as the Home Affordability Modification Program (HAMP), as well as a loan modification under its own internal guidelines. A copy of the letter is attached as Exhibit 8.

**RESPONSE: Admitted that Plaintiffs' application for loss mitigation assistance was denied.**

34.     Three days later, on January 25, 2016, Citizens One sent a letter to the Zielinskis that was very similar to its January 22nd letter (Exhibit 8). This letter also informed the Zielinskis that it would not grant them any type of relief or assistance.

**RESPONSE: Admitted that Plaintiffs' application for loss mitigation assistance was denied.**

35.     On March 16, 2016, the Zielinskis sent a "hardship letter" to Citizens One asking to be considered for approval of a short sale. The Zielinskis could not sell their home without Citizen Bank's prior approval because the amount they owed on the First Mortgage and HELOC were more than the sales price they were offered for their home.

**RESPONSE: Admitted.**

36.     The Zielinskis retained an attorney to represent them in connection with their request for approval of a short sale.

**RESPONSE: Citizens is without knowledge or information sufficient to form a belief as to Plaintiffs' retention of an attorney.**

37.     On March 23, 2016, Citizens One sent a letter to the Zielinskis in response to their March 16th letter. This letter states, "[w]e have received your request for Loss Mitigation Assistance - including your financial package - and we are in the process of reviewing your documentation." A copy of the letter is attached as Exhibit 9.

**RESPONSE: Admitted.**

38.     On March 25, 2016, Citizens One sent a letter to the Zielinskis asking them to submit additional documents. A copy of this letter is attached as Exhibit 10. The Zielinskis thereafter submitted the requested documents.

**RESPONSE: Admitted only that Citizens One sent the March 25, 2016 letter.**

39.     On April 20, 2016, Citizens One sent a letter to the Zielinskis again requesting additional documents, including bank statements for the two most recent months. A copy of this letter is attached as Exhibit 11. The Zielinskis had previously submitted bank statements to Citizens One in response to its earlier requests.

**RESPONSE: Admitted only that Citizens One sent the April 20, 2019 letter.**

40.     On April 27, 2016, Citizens One sent another letter to the Zielinskis requesting additional documents, including bank statements for the two most recent months.

**RESPONSE: Admitted.**

41.     As part of the short sale review process, the Zielinskis had to repeatedly resubmit the same documents they had previously submitted on multiple occasions in connection with their earlier requests for relief and assistance. As it had done previously, Citizens One denied receiving documents the Zielinskis had submitted, forcing them to resubmit the same documents.

**RESPONSE: Denied.**

42.     Citizens One eventually notified the Zielinskis that their request for a short sale had been approved.

**RESPONSE: Admitted.**

43.     On July 30, 2016, the Zielinskis sold their home for $285,000.00. The deed was recorded in the Middlesex South Registry of Deeds on August 12, 2016, in Book 67803, Page 137. The First Mortgage and H BLOC were paid from the sales proceeds at the closing.

**RESPONSE:  Admitted**

44.     Citizens Bank, through Citizens One, committed multiple unfair or deceptive acts or practices during the time period beginning on October 2, 2015, in connection with the Zielinskis' requests for mortgage relief and assistance. These unlawful acts include false and misleading representations, repeated requests to resubmit documents the Plaintiffs had previously submitted, broken promises, and failures to follow-through with promised action. The unlawful conduct is more particularly described below.

**RESPONSE: Denied.**

## AS TO MASSACHUSETTS GENERAL LAWS CHAPTER 93A AND CORRESPONDING REGULATIONS

45.     General Laws Chapter 93A, § 2, proscribes unfair or deceptive acts or practices in the conduct of trade or commerce in Massachusetts.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

46.     Citizens Bank is a "person" as defined in G.L. c. 93A, § 1.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

47.     Citizens Bank was engaged in trade or commerce in Massachusetts within the meaning of G.L. c. 93A, § 1, at all times relevant to the events described in this Complaint.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

48.     The Plaintiffs are "consumers" as defined in G.L. c. 93A, § 1.

**RESPONSE: The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

49.     On July 12, 2019, the Plaintiffs, through counsel, sent demand letters to Citizens Bank and Citizens One in accordance with G.L. c. 93A, § 9(3). United States Postal Service records confirm that these letters were received. This Complaint was filed more than thirty (30) days after the demand letters were delivered to Citizens Bank and Citizens One.

**RESPONSE: Admitted.**

50.     In accordance with the enabling authority set forth in G.L. c. 93A, § 2(c), the Massachusetts Attorney General has promulgated various regulations that are relevant to the events described in this Complaint.

**RESPONSE: Citizens states that the quoted regulations speak for themselves, and denies any characterization set forth in this paragraph.**

51.     These regulations include 940 CMR 3.16, which provides in relevant part that an act or practice is unfair or deceptive and violates Chapter 93A, § 2, if: 1) It is oppressive or otherwise unconscionable in any respect; or .. . 3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or 4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2.

**RESPONSE: Citizens states that the quoted regulations speak for themselves, and denies any characterization set forth in this paragraph.**

52.     Citizens Bank committed various unfair and deceptive acts and practices that violate M.G.L. c. 93A, § 2(a) and regulations promulgated thereunder; violated various statutes, rules, regulations and laws meant to protect the public; and violated the Federal Trade Commission Act and other federal consumer protection laws within the purview of G.L. c. 93A, § 2. Those unfair, deceptive, oppressive, unconscionable and/or abusive acts or practices, and the laws and regulations that were violated, are more particularly described below.

**RESPONSE: Denied.**

## COUNT I
## VIOLATIONS OF GENERAL LAWS CHAPTER 93A

53.     The Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

**RESPONSE: Citizens restates its responses to the previous paragraphs as if incorporated herein.**

54.     In response to the Plaintiffs' requests for mortgage relief and assistance, Citizens One required them to submit various forms and documents.

**RESPONSE: Admitted.**

55.     The Plaintiffs submitted all of the forms and documents requested by Citizens One in a timely manner.

**RESPONSE: Denied.**

56.     In the course of reviewing the Plaintiffs' requests for mortgage relief and assistance, Citizens Bank committed the following unfair or deceptive acts or practices:

a.      Repeatedly requiring the Plaintiffs to submit documents and forms that were already in Citizen One's possession;

b.     Failing to coordinate and track documents submitted by the Plaintiffs in order to avoid having the Plaintiffs resubmit the same documents;

c.     Repeatedly losing and/or falsely denying having received documents and forms submitted by the Plaintiffs, thereby forcing the Plaintiffs to resubmit the same documents and forms on multiple occasions;

d.     Repeatedly requiring the Plaintiffs to update documents they had previously submitted (for example, bank statements) when the only reason those documents had to be updated was Citizen One's failures to timely review and respond to the Plaintiffs' requests for relief and assistance;

e.     Failing to timely review and respond to the Plaintiff's requests for mortgage relief and assistance;

f.     Sending letters to the Plaintiffs that contained confusing, misleading and contradictory statements concerning the status of their requests for mortgage relief and assistance;

g.     Forcing Mrs. Zielinski to spend long periods of time on hold when she called Citizens One, repeatedly transferring her calls from one department to another, and terminating her calls before she was able to speak to a Citizens One employee who was familiar with the Plaintiffs' requests for mortgage relief and assistance;

h.     Miscalculating the Plaintiffs' income by not giving them credit for rental income they reported receiving;

i.     Failing to review and respond to consumers' requests to be considered for a short sale in a timely manner;

     j.      Failing to perform loan servicing functions consistent with its responsibilities to the Plaintiffs.

**RESPONSE: Denied.**

57.     As a direct and proximate result of Citizen Bank's multiple violations of Chapter 93A, the Plaintiffs suffered severe emotional distress, including mental anguish, fear, anger, frustration, anxiety, embarrassment and humiliation; expenses for photocopying documents, sending faxes and mailing documents to Citizens One; late fees, accrued interest, and loss of equity in their home due to the accumulation of mortgage loan arrearages; damages to their credit history and credit rating; and legal fees in connection with their requests for short sale approval and the sale of their home.

**RESPONSE: Denied.**

58.     The emotional stress suffered by Mrs. Zielinski was so severe that it caused her to suffer a total but temporary loss of vision, and then a permanent and partial loss of vision. The Plaintiffs incurred expenses for Mrs. Zielinski's medical treatment and will continue to incur expenses for her future medical treatment.

**RESPONSE: Denied.**

59.     The injury and harm suffered by the Plaintiffs was reasonably foreseeable.

**RESPONSE: Denied.**

60.     Citizens Bank knowingly and willfully violated Chapter 93A and the Plaintiffs are therefore entitled to double or treble damages.

**RESPONSE: Denied.**

## COUNT II
## VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT
## (12 U.S.C. § 5531) AS *PER SE* VIOLATIONS OF CHAPTER 93A

61.     The Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

**RESPONSE: Citizens restates its responses to the previous paragraphs as if incorporated herein.**

62.     Citizens Bank offers a "consumer financial product or service," and is therefore a "covered person" as defined in the Consumer Financial Protection Act, 12 U.S.C. §§ 5481(6), 5481(15)(A)(I) (the CFPA).

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

63.     The CFPA prohibits covered persons from "committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service. 12 U.S.C. § 5531(a)."

**RESPONSE:  Citizens states that the quoted portions of the CFPA speak for themselves, and denies any characterization set forth in this paragraph.**

64.     Under the CFPA, an act or practice is unfair if "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or competition." 12 U.S.C. § 5531(c).

**RESPONSE:  Citizens states that the quoted portions of the CFPA speak for themselves, and denies any characterization set forth in this paragraph.**

65.     Under the CFPA, an act or practice is abusive if it "(1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or

service; or (2) takes unreasonable advantage of - (A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service; (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer." 12 U.S.C. § 5531(d)(1), (2).

**RESPONSE:   Citizens  states  that  the  quoted  portions  of  the  CFPA  speak  for themselves, and denies any characterization set forth in this paragraph.**

66.     The acts or practices described in paragraph 56 above and generally herein are unfair, deceptive and/or abusive, and therefore violate the CFPA.

**RESPONSE:  Denied.**

67.     The CFPA is a federal law meant to protect consumers,

**RESPONSE:   Citizens is without knowledge or information sufficient to determine the meaning behind the CFPA.**

68.     The acts or practices committed Citizens Bank which violate the CFPA also violate 940 CMR 3.16(1), (3) and (4), and are therefor *per se* violations of Chapter 93A.

**RESPONSE:  Denied.**

69.     The acts or practices committed by Citizens Bank which violate the CFPA are also unfair, deceptive and/or abusive and constitute violations Chapter 93A, irrespective of whether they also violate the CFPA.

**RESPONSE:  Denied.**

70.     Citizens Bank knew or should have known that its unlawful conduct violated the CFPA and Chapter 93A.

**RESPONSE:  Denied.**

71.     Citizens Bank knowingly and willfully violated Chapter 93A and the Plaintiffs are therefore entitled to double or treble damages.

**RESPONSE:  Denied.**

72.     As a direct and proximate result of Citizen Bank's violations of the CFPA, the Plaintiffs suffered the injuries, harm and damages described in Count I.

**RESPONSE:  Denied.**

**COUNT III**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. § 1692) AND MASSACHUSETTS DEBT COLLECTION REGULATIONS**
**AS *PER SE* VIOLATIONS OF CHAPTER 93A**

73.     The Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

**RESPONSE: Citizens restates its responses to the previous paragraphs as if incorporated herein.**

74.     The First Mortgage and HELOC are "debts" as defined in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5) (FDCPA), in the debt collection regulations promulgated by the Massachusetts Division of Banks (209 CMR 18.02), and in the debt collections regulations promulgated by the Massachusetts Attorney General (940 CMR 7.03).

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

75.     Citizens Bank is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and 209 CMR 18.02.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, denied.**

76.     The Plaintiffs are "debtors" as defined in 15 U.S.C. § 1692a(5) and 940 CMR 7.03, and "consumers" as defined in 15 U.S.C. § 1692a(3) and 209 CMR 18,02,

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, denied.**

77.     Citizens Bank, through Citizens One, was engaged in "servicing" as defined in 209 CMR 18.02.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, denied.**

78.     The FDCPA (15 U.S.C. 1692e), 209 CMR 18.16, and 940 CMR 7.08 prohibit false, misleading or deceptive representations in connection with the collection of a debt.

**RESPONSE:  This is a characterization of multiple regulations to which no response is required.  Any characterization set forth in this paragraph is denied.**

79.     In the process of providing loss mitigation services to the Plaintiffs, Citizens One made false, misleading or deceptive representations that violate 15 U.S.C. § 1692e, 209 CMR 18.16(8), and 940 CMR 7.08(8), as described in paragraph 56 above and generally herein.

**RESPONSE:  Denied.**

80.     The FDCPA and the Massachusetts debt collection regulations described above are laws and regulations meant to protect consumers.

**RESPONSE:  Citizens is without knowledge or information sufficient to determine the meaning behind the FDCPA.**

81.     Any conduct that violates the FDCPA is also a *per se* violation of Chapter 93A.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, denied.**

82.     Any conduct that violates 209 CMR 18 is also a *per se* violation of Chapter 93A, as provided in 209 CMR 18.01(1) and 940 CMR 3.16.

**RESPONSE: The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

83.     Any conduct that violates 940 CMR 7 is also a *per se* violations of Chapter 93A as provided in 940 CMR 3.16.

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, admitted.**

84.     The unfair, deceptive or abusive practices committed by Citizens Bank that violate the FDCPA, 209 CMR 18 and 940 CMR 7 are also unfair, deceptive and/or abusive acts or practices that independently violate Chapter 93A, irrespective of whether they also violate those laws and regulations.

**RESPONSE:  Denied.**

85.     Citizens Bank knew or should have known that its unlawful conduct violated the FDCPA, 209 CMR 18, 940 CMR 7 and Chapter 93 A.

**RESPONSE:  Denied.**

86.     Citizens Bank knowingly and willfully violated Chapter 93A and the Plaintiffs are therefore entitled to double or treble damages.

**RESPONSE:  Denied.**

87.     As a direct and proximate result of Citizen Bank's violations of the FDCPA and the Massachusetts debt collection regulation described above, the Plaintiffs suffered the injuries and harm described in Count I**.**

**RESPONSE:  Denied.**

## COUNT IV
## VIOLATIONS OF HAMP REQUIREMENTS AND GUIDELINES
## AS *PER SE* VIOLATIONS OF CHAPTER 93A

88.     The Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

**RESPONSE: Citizens restates its responses to the previous paragraphs as if incorporated herein.**

89.     The Home Affordable Modification Program (HAMP) was a federally-funded program that provided financial incentives to participating mortgage loan servicers to modify delinquent mortgage loans. HAMP ended on December 31, 2016, but was in effect at all times relevant to the events described in this Complaint.

**RESPONSE:  Admitted.**

90.     The purpose of HAMP was to provide relief and assistance to homeowners who had defaulted or were likely to default on their mortgage loans by reducing their loan payments to affordable levels and thereby avoid losing their homes to foreclosure.

**RESPONSE:  Citizens is without knowledge or information sufficient to determine the purpose of HAMP.**

91.     To participate in HAMP, servicers were required to enter into an agreement with the U.S. Treasury Department - known as a Servicer Participation Agreement (SPA) - and to comply with certain requirements. Citizens Bank entered into an SPA with the Treasury Department and was a participating servicer at all times relevant to the events described in this Complaint.

**RESPONSE:  Admitted.**

92.     The First Mortgage and HELOC were privately-owned at all times relevant to the events described in this Complaint. Stated differently, neither loan was owned by the Federal

National Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac), which are known as Government Sponsored Enterprises (GSEs),

**RESPONSE:  Admitted.**

93.   As a participating servicer, Citizens Bank was compelled to comply with directives and guidance issued by the Treasury Department, including the obligations and requirements set forth in the Making Home Affordable Handbook for Servicers of Non-GSE Mortgages (the "HAMP Handbook").

**RESPONSE:   Admitted, except as to any characterizations set forth in this paragraph.**

94.   The First Mortgage was issued prior to January 1, 2009, and was therefore eligible for a modification through HAMP,

**RESPONSE:  Denied.**

95.   In the process of considering the Plaintiffs for a loan modification under HAMP, Citizens Bank failed to comply with various requirements for participating servicers set forth in the HAMP Handbook. Those requirements include:

   a.   Coordinating maintenance and tracking of documents provided by the Plaintiffs so they would not be required to repeatedly resubmit forms and documents they had previously submitted;

   b.   Failing to promptly notify the Plaintiffs of the need for additional information;

   c.   Being knowledgeable about the Plaintiffs' financial situation and the current status of their delinquency and the home retention or non-foreclosure liquidation options that were available;

    d.      Failing to maintain a toll free number where the Plaintiffs could reach a Citizens One representative who was capable of providing specific details about the HAMP modification process and/or who was knowledgeable with the Plaintiffs' requests for relief and assistance;

    e.      Failing to connect Mrs. Zielinski to the Relationship Manager assigned to the their requests for relief; and

    f.      Complying with various federal and state laws, including the FTC Act, the FDCPA, the CFPA and Chapter 93A.

**RESPONSE:  Denied.**

96.    While there is no private right of action under HAMP for violating or failing to comply with its requirements, violations of HAMP can be unfair or deceptive acts or practices that violate Chapter 93A, *See, e.g., Morris v. BAC Home Loans Servicing, LP,* 775 F. Supp, 2d 255, 259 (D. Mass. 2011).

**RESPONSE:  This paragraph contains a characterization of the law to which no response is required.  To the extent a response is required, denied.**

97.    The unfair or deceptive acts or practices described above which violate HAMP are independently actionable as violations of Chapter 93A. The recovery of damages for those violations under Chapter 93A is compatible with the objectives and enforcement mechanisms of HAMP. Id

**RESPONSE:  The allegations of this paragraph consist of legal conclusions to which no response is required.  To the extent a response is required, denied.**

98.    Citizens Bank knew or should have known that its unlawful conduct violated its obligations as a participating servicer under HAMP.

**RESPONSE:  Denied.**

99.    Citizens Bank knowingly and willfully violated its obligations under HAMP and Chapter 93A and the Plaintiffs are therefore entitled to double or treble damages.

**RESPONSE:  Denied.**

100.    As a direct and proximate result of Citizen Bank's violations of the HAMP, the Plaintiffs suffered the injuries and harm described in Count I.

**RESPONSE: Denied.**

## AFFIRMATIVE DEFENSES

Citizens asserts that Plaintiffs' claims against Citizens should be denied in whole or in part by the Affirmative Defenses set forth below.  Also, Citizens asserts that some of the averments and claims in the Complaint are vague and, as a result, Citizens is not able to ascertain what, if any, other affirmative defenses may be available to deny those averments and claims in whole or in part.  Therefore, Citizens hereby gives notice that it intends to rely on additional affirmative defenses that become available or apparent during discovery and reserve the right to amend this Answer to assert such additional defenses.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint and each purported cause of action or claim for relief therein fails to allege facts sufficient to constitute a cause of action against Citizens or a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiffs' claims should be dismissed, in whole or in part, for failure to bring them within the prescribed statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims should be dismissed, in whole or in part, based on the doctrine of

Laches.

## FOURTH AFFIRMATIVE DEFENSE
### (No Private Right of Action)

Plaintiffs have no private right of action under HAMP.

## FIFTH AFFIRMATIVE DEFENSE
### (Not a Debt Collector)

Citizens is not a debt collector under the FDCPA.

## SIXTH AFFIRMATIVE DEFENSE
### (Proper Chapter 93A Response)

Citizens' response letter to the M.G.L. Chapter 93A demand discharged its obligations

under that statute.

Dated:  October 15, 2019

Respectfully submitted,

CITIZENS BANK, N.A.
By its attorneys:

/s/ Michaels E. Pastore
Pete S. Michaels (BBO# 553535)
Michael E. Pastore (BBO# 669692)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000
Facsimile: (617) 542-2241
Email: psmichaels@mintz.com
        mepastore@mintz.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 15th day of October 2019.

/s/ Michael E. Pastore
Michael E. Pastore