## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH M. ZIELINSKI, JR., JOANNE T. ZIELINSKI, | ) ) | **CIVIL ACTION** |
| **Plaintiffs,** | ) | **NO.  4:19-cv-12084-TSH** |
|  | ) |  |
| **v.** | ) |  |
|  | ) |  |
| **CITIZENS BANK, N.A.,** | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 19)**

**JULY 20, 2021**

**HILLMAN, D.J.,**

Joseph and Joanne Zielinski (collectively, "Plaintiffs") filed this action against their mortgage lender Citizens Bank, N.A. ("Citizens") for unfair and deceptive acts and practices, in violation of M.G.L. 93A, § 2 (Count I); violation of the Consumer Financial Protection Act ("CFPA") (12 U.S.C. §5531) as a *per se* 93A violation (Count II); violation of the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692), 209 CMR 18, and 940 CMR 7 (collectively, "Massachusetts Debt Collection Regulations"), as *per se* 93A violations (Count III); and violation of the Home Affordable Modification Program ("HAMP") regulations as *per se* 93A violations (Count IV).

1

Citizens has moved for summary judgment on all claims.  (Docket No. 19).  After hearing, Citizens' motion is ***granted***.

## I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To avoid summary judgment, a factual dispute must be both "genuine" and "material."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is "genuine" if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party.  *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994).  A fact is "material" if it might affect the outcome of the suit under the applicable law.  *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the nonmoving party's case."" *Rakes v. United States*, 352 F.Supp.2d 47,52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325).  Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex* at 325).  When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002).

## II.  Background[1]

On September 10, 2003 Joanne and Joseph Zielinski took out a $200,000 mortgage loan and opened a $50,000 home equity line of credit on their home in Maynard, Massachusetts from Citizens Bank ("Citizens").  (Dfts' SOMF ¶¶ 3-4, Docket No. 26).  Plaintiffs' mortgage payments became delinquent, so they entered into a Loan Workout Modification Agreement with Citizens on March 12, 2008.  (¶ 6).

The Zielinskis subsequently failed to make the required payments under the 2008 Modification Agreement and wrote to Citizens on July 7, 2015 to ask for mortgage assistance to prevent foreclosure ("first loss mitigation request").  (¶¶ 7-8; Ex. 1, Docket No. 22-1).  On July 21, 2015, Citizens responded, asking the Zielinskis for certain financial information and documentation, including tax returns, financial forms, pay stubs, and bank statements.  (¶¶ 9-10, Ex. 2.).  Joanne Zielinski claims she had already submitted the requested forms to Citizens. (Zielinski Dep. 30:13-18, Docket No. 23-1).

On August 10, 2015, Citizens wrote to confirm that it had received the Zielinski's complete Borrower Response Package and would decide whether the Zielinskis were eligible for mortgage assistance within 30 days.  (¶ 12, Ex. 3).  On September 13, 2015, Citizens denied the Zielinski's first loss mitigation request, providing its findings that the Zielinskis were ineligible for three types of payment plans and three types of mortgage modification programs.  (¶ 13, Ex. 14).  Citizens' conduct during the first loss mitigation request is not part of this case: the Zielinski's' suit is limited to the second loss mitigation request and short sale approval process, which are described below.

---

[1] Unless otherwise stated, these facts are taken from Plaintiffs' Responses to Defendants' Statement of Material Facts (Dfts' SOMF) and Plaintiffs' Statement of Material Facts (Pltfs' SOMF) which can both be found at Docket No. 26.

*Second Loss Mitigation Request*

On or before October 2, 2015, the Zielinskis submitted a second loss mitigation request. On October 2, 2015, Citizens sent the Zielinskis two letters.  The first letter asked them to complete a Borrower Assistance Form, provide income and hardship documentation, and a request for transcript of tax return form so it could consider their eligibility for loan modifications or liquidation options (including the Home Affordable Modification Program, or HAMP); the second letter informed them that they were no longer under consideration for the Home Affordable Foreclosure Alternative Program (HAFA) because they had not responded to a solicitation letter within 14 days.  (Comp., Ex. 2, 3).  On October 15, 2015, Citizens wrote that it had received the second loss mitigation request and was reviewing the documentation the Zielinski's had submitted for completeness.  (SOF ¶ 14, Ex. 7).  Citizens also sent a second letter on October 15, 2016, to introduce the representative assigned to their application.  (Comp., Ex. 6).  On October 20, 2015, Citizens wrote that their application was incomplete and asked them to send their most recent bank statements, a 2014 tax return, and proof of rental income by November 19, 2015.  (¶¶ 16-17, Ex. 8).  Joanne Zielinski claims that she had already faxed all the requested documents in response to Citizens' October 2, 2014 letter on October 14, 2015, and could not resolve the issue despite long hours spent calling Citizens customer service.  (¶¶ 10, 15).

On November 6, 2015, Citizens wrote that the Zielinski's Borrower Response Package was complete, and that it would determine their eligibility for assistance within 30 days.  (¶19, Ex. 9).  Joanne Zielinski says that she faxed her 2014 tax return (which she had previously provided) to Citizens, again, at their request on December 21, 2015, and has provided what purports to be a fax cover sheet from that date.  (Docket No. 25-1).  On December 24, 2015,

Citizens sent a letter inviting the Zielinskis to apply for a mortgage modification; that letter made no reference to the pending second loss mitigation request.  (Docket No. 25-1).  Joanne Zielinski says that she faxed additional documents (which she had previously provided) to Citizens on January 21, 2015 and has provided what purports to be a fax cover sheet from that date.  (Docket No. 25-1).  On January 22, 2016, Citizens denied the Zielinski's second loss mitigation request in a letter which set out the reasons for non-approval for each type of payment plan or program, including HAMP.  (¶ 20, Ex. 10).

On January 25, 2016, the Zielinskis received a letter from Citizens inviting them to apply to sell their home through a short sale under the HAFA program.  (Docket No. 24-5).  This letter confused the Zielinskis because Citizens' October 2, 2015 letter had announced that they were not eligible for HAFA.  (Pltfs' SOMF ¶ 22).  On February 9, 2016 Citizens sent a letter that the Zielinskis were no longer eligible for HAFA because they had failed to respond to the January 25th letter; Joanne Zielinski states that she called Citizens and was told that the February 9th letter had been "sent in error." (Docket No. 25-6).  On February 10, 2016, Citizens sent the Zielisnkis another letter asking them to submit a borrower assistance form, request for transcript of tax return form, income documentation, and hardship documentation by March 11, 2016.  This letter requested the same set of materials as the October 2, 2015 letter, and contained the same language that the materials would be used to "identify a possible solution for your mortgage loan delinquency."  (Docket No. 25-7).

*Request for Short Sale Approval*

On March 16, 2016, the Zielinskis decided that they would not be able to modify their mortgage loan and remain in their home, and they submitted a request for Citizens to approve a short sale of the property (they needed Citizens' approval because their mortgage debt exceeded

the value of their home).  Citizens confirmed that it received the request on March 23, 2016, was reviewing their application for completeness, and would review their eligibility for loan modifications or liquidation options (including the Home Affordable Modification Program, or HAMP). (¶ 22, Ex. 11).

On March 25, 2016, Citizens notified the Zielinskis that their application was incomplete, and asked them to provide a signed financial form and copies of arms' length affidavits concerning the proposed short sale by April 24, 2014.  (Ex. 13).  On April 20, 2016, Citizens sent a letter asking for recent bank statements, a valid Listing Agreement with seller and broker signatures, tax returns, and the Zielinski's Public Assistance benefits statement.  (¶¶ 23-24; Ex. 14).  Again, Joanne Zielinski states that she had previously provided all the requested documents. (¶ 25, 28).

On April 27, 2016, Citizens sent another letter, this time asking for the Public Assistance Benefits Statement, bank statements, and tax returns, claiming that the Zielinskis had missed the April 24, 2016 deadline to submit them.  (¶ 28; Ex. 15).  On May 26, 2016, Citizens sent a letter informing the Zielinskis that it would initiate foreclosure procedures against them; the letter makes no mention of their outstanding short sale request.  (Docket No. 25-8).

On May 27, 2016, Citizens sent another letter confirming that the Zielinski's Borrower Response Package was complete, and a decision would be made within thirty days.  (¶ 29; Ex. 16).  On June 21, 2016, Citizens sent a letter addressed to the Zielinskis but whose salutation line read "Dear Jitendra Mandal, Veena Mandal."  (Docket No. 25-9).  It introduced the HAFA short sale program as an option but made no reference to the Zielinski's pending short sale approval request.  (*Id.*).

Citizens approved the Zielinski's short sale request on July 25, 2016, and the property was sold according to the terms of the short sale offer, which paid off the first lien mortgage in the amount of $ 243,745.29 and a short payoff of $12,000 for the home equity line of credit.  (¶¶ 30, 32).

*Damages*

The Zielinskis seek economic damages for costs associated with resubmitting documents, late fees, accrued interest, loss of equity in their home due to the accumulation of mortgage loan arrearages; damages to their credit history and credit rating, and legal fees connected with seeking approval for the short sale and the short sale of their home.  (Comp. ¶ 57).  They also seek emotional distress damages and past and future medical expenses arising from Joanne Zielinski's retinal vein occlusion.  (*Id*.).

At some point before June 21, 2016, Joanne Zielinski suffered a central retinal vein occlusion in her left eye which she attributes to the severe emotional distress caused by Citizens' actions. (Comp. ¶ 57-8).  According to her deposition and summary judgment affidavit, in addition to resending documents and fielding confusing letters from Citizens, Joanne Zielinski also spent "hours" and "many an occasion" on the telephone trying to reach a person who was knowledgeable about her mortgage, including "long periods of time on hold," but was routinely transferred or disconnected.  (Zielinski Dep. at 35:6-20; Zielinski Decl. ¶ 26, Docket No. 25). Besides Joanne's testimony about her injury and the stress and anguish that Citizens caused her, the Zielinskis have submitted a June 30, 2020 letter from her treating optometrist, Dr. Baker, describing the injury, its potential causes, and her prognosis:

> "I saw Joanne for the first time on June 21, 2016 . . . Her vision at
> that time was counting fingers at 2 ft in the left eye and 20/25 in
> the right.  She has been receiving ongoing injections in the left eye
> to help control any macular edema and neovascularization.  Her

limitation of vision in the left eye is due to the ischemic nature of
her vein occlusion and will likely not improve.

There is a known association of hypertension with central retinal
vein occlusions.  Hypertension can be related to different stressful
situations and stress levels.  Central retinal vein occlusions also
have a higher incidence in those with diabetes and glaucoma.
Other less common causes are hypercoagulable states, information,
and up to 45 % can be idiopathic."

(Docket No. 23-1).

The Zielinskis did not disclose any experts pursuant to Fed. R. Civ. P. 26(b).  However,
they plan to call Dr. Baker "as an expert witness [who] will testify to the contents of the [June
30, 2020] letter . . ." (Zielinski Decl. ¶ 37).  Citizens did not disclose any experts pursuant to R.
26(b).

### III.  Procedural History

Citizens removed this case from Worcester County Superior Court, asserting federal
question jurisdiction as to Counts II, III, and IV, supplemental jurisdiction under 28 U.S.C. §
1367(a), and diversity jurisdiction, as Citizens is headquartered in Rhode Island and Plaintiffs
live in Massachusetts.  No motions to dismiss were filed.

### IV.  Discussion

The Zielinskis have alleged a standalone 93A claim (Count I), as well as claims that
Citizens violated 93A by violating the CFPA (Count II); the FDCPA and state debt collecting
regulations (Count III); and the rules of the federal Home Affordable Modification Program
(HAMP) (Count IV).

A.  M.G.L. 93A (Count I)

8

93A prohibits "unfair or deceptive acts of practices in the conduct of any trade or commerce." M.G.L. c. 93A § 2.  To recover, a plaintiff must prove that "a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the claimant suffered a loss of money or property as a result." *Bowers v. Baystate Techs., Inc.*, 101 F.Supp.2d 53, 54-55 (D. Mass. 2000).

 The statute does not define what constitutes an unfair or deceptive practice.  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact ... the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." *Milliken & Co. v. Duro Textiles*, LLC, 887 N.E.2d 244, 259 (Mass. 2008) (quoting *Schwanbeck v. Federal-Mogul Corp.*, 578 N.E.2d 789, 803-04 (Mass. 1991)).  In other words, courts perform a "legal gate-keeping function" for 93A claims by considering: "(1) whether the practice … is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009); *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 (1975).  A practice is deceptive ""if it 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'"" *Aspinall v. Philip Morris Companies, Inc*., 442 Mass. 381, 813 N.E.2d 476, 486 (2004) (brackets omitted).

The Zielinskis argue that Citizens violated 93A in four ways: 1) *clerical error or negligence*, by requiring them to resubmit documents and forms to be considered for mortgage assistance or a short sale approval, and sending contradictory or confusing form letters; 2) *poor customer service*, by transferring, disconnecting, or preventing Joanne Zielinski from reaching

anyone at Citizens who could help answer her questions or correct the record as to missing

documents, requiring her to spend hours on the telephone; 3) *failing to timely review and*

*respond* to their requests for mortgage assistance and short sale approval; and 4) *miscalculating*

*their rental income.*

### 1. Clerical Error or Negligence

"[M]inor delay or trivial clerical flaws" do not state 93A claims in the mortgage loan

modification context. *Morris v. BAC Home Loans Servicing, L.P.*, 775 F.Supp.2d 255, 263 (D.

Mass. 2011). The Zielinskis object that Citizens' multiple demands for documents which they

had previously submitted and contradictory form letters created a confusing and unfair

"document treadmill." However, they have not pointed to record evidence or caselaw which

shows why such repeated requests were unfair or deceptive under 93A.

The First Circuit has plainly stated in a similar case that while "inconsistent and

confusing communications" render the loan modification process "more stressful," a mortgage

servicer's recordkeeping practices sound in negligence, and, taken alone, do not violate 93A.

*Young v. Wells Fargo Bank*, N.A., 828 F.3d 26, 34 (1st Cir. 2016). In *Young*, the First Circuit

agreed with the district court's grant of summary judgment against a borrower whose servicer

told her she would be offered a loan modification under HAMP, then offered her a non-HAMP

loan modification on less favorable terms several months later. *Young v. Wells Fargo Bank,*

*N.A.*, 109 F.Supp.3d 387, 400-01 (D. Mass. 2015).

Even under a more permissive motion to dismiss standard, the caselaw demonstrates that

something more than duplicative document requests is needed to state a 93A claim.[2] In *Charest*,

---

[2] Of course, on a motion for summary judgment such as this one, a plaintiff must not only plead
adequate 93A allegations but present enough evidence to create a genuine issue of material fact
that cannot be resolved as a matter of law and must be tried. As is evident from this analysis,

the court allowed a mortgagor's 93A claim to survive dismissal where the borrowers plausibly alleged that the mortgage servicer demanded that they repeatedly resubmit unnecessary and duplicative documents. *Charest v. Federal Nat. Mortgage Ass'n.*, 9 F.Supp.3d 114, 126 (D. Mass. 2014). However, in *Charest* the servicer had also misrepresented the borrowers' eligibility for a loan modification and denied prior applications based on incorrect facts about their income or whether the mortgaged property was their primary residence. *Id.* at 126. The Zielinskis also have weaker claims than the borrower in *Sullivan*, whose 93A claim survived dismissal, but who had alleged that in addition to repeatedly requesting documents that it had already received, the mortgage servicer allowed long delays to ensue without responding to inquiries and denied loan modifications applications for false reasons. *Sullivan v. Bank of New York Mellon Corp.*, 91 F.Supp.3d 154, 159 (D. Mass. 2015). Nor is Citizens' conduct here as egregious as in *Hanrahan*, where the court denied a motion to dismiss 93A claims when it found that the borrower had plausibly alleged that her mortgage servicer did not respond to her HAMP application for more than a year and a half—even though she was eligible for relief—and later denied her application on false pretenses. *Hanrahran v. Specialized Loan Servicing*, LLC, 54 F.Supp.3d 149, 152-53 (D. Mass. 2014).

### 2. Poor Customer Service

Poor customer service in the loan modification context may give rise to a 93A violation, but not under the facts that Joanne Zielinski describes in her deposition and in the affidavit attached to the summary judgment opposition, even when viewed in the light most favorable to the Zielinskis.

---

much of the case law in this district suggesting when a mortgage servicer's conduct violates 93A is contained in decisions on motions to dismiss.

A viable 93A action may lie when the loan modification process is drawn out for more than a year partly because the mortgage servicer switched the borrower's primary point of contact more than seven times, where each new assignee did not have access to any documentation that had previously been submitted, where one assignee closed her file because he could not reach the borrower, and when the servicer's representatives were unreachable for "weeks at a time." *Kirtz v. Wells Fargo,* 2012 WL 5989705 at *2 (D. Mass. Nov. 29, 2012).  It may also lie where a servicer's representatives give conflicting statements about whether a borrower will be approved for a loan modification or give conflicting reasons for the denial of a loan modification. *See Stagikas v. Saxon Mortg. Services, Inc.*, 2013 WL 5373275 at *5 (D. Mass. Sep. 24, 2013); *Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964 at *10 (D. Mass. July 15, 2011).  However, the failure of a servicer to return a borrower's calls or e-mail, or providing unclear and confusing information, is mere negligence which by itself does not support a 93A claim where the servicer considered the borrower's loan modification application and explained the reasons underlying its denial. *Foley v. Wells Fargo, N.A.*, 2017 WL 1591835 at *9-10 (D. Mass. May 1, 2017).

The Zielinskis have not provided evidence of conduct which moves beyond negligence to unfair or deceptive conduct.  While it was undoubtedly frustrating for Joanne Zielinski to be unable to reach a Citizens' representative knowledgeable about her case by phone, the record shows that the Zielinski's requests for loan assistance and short sale approval were considered, she was informed about any documentation needed for Citizens to make a determination on her loan, and Citizens provided a detailed explanation for its refusal to offer loan assistance and actually approved the short sale request.  The Zielinskis have not shown why this conduct was either unfair or deceptive.

3.  *Failure to Timely Review and Respond to Requests for Mortgage Relief or to Approve Short Sale*

Citizens told the Zielinskis that it would determine their eligibility for mortgage assistance within thirty days, but it did not issue a decision until January 22, 2016, ten weeks after it informed them that their application was complete.  Citizens also told the Zielinskis that it would issue a decision on their request for a short sale within 30 days after the application was complete on May 27, 2016, and did not issue a decision until July 25, 2016, eight weeks later. These delays were minor compared to other cases where borrowers were "strung along over the course of several years" as their servicer evaluated their requests for mortgage assistance, and by themselves do not constitute unfair or deceptive practices.  *See Hannigan v. Bank of America, N.A.*, 48 F.Supp.3d 135, 142 (D. Mass. Sep. 24, 2014) (denying motion to dismiss 93A claim where mortgage servicer allegedly repeatedly offered loan modifications and confirmed new loan provisions, only to ultimately deny borrower's request for modification); *Oksoui v. JP Morgan Case Bank, NA*, 851 F.3d 851 (9th Cir. 2017) (affirming district court's summary judgment under California's unfair trade practices law against borrower whose mortgage servicer knew she would be ineligible for loan modification but continued to seek payments promising her a loan modification for two years).

4.  *Miscalculation of Rental Income*

The Zielinskis alleged that Citizens miscalculated their income when evaluating their eligibility for mortgage assistance by not accounting for rental income. (Comp. ¶ 56(d)). Citizens' January 22, 2016 letter denying the second loss mitigation request attributes $600 in rental income to the Zielinskis.  (Docket No. 22-10 at 6).  However, the Zielinskis have not produced any evidence beyond the allegation in their Complaint that they had rental income exceeding $600 at that time, or that they disclosed that income to Citizens. Without any evidence

to support their claim, there is no genuine dispute of material fact that Citizens unfairly or deceptively failed undervalued their rental income when it denied their request for mortgage assistance.

     *5. Whether the Zielinskis Four 93A Claims Add Up to Unfair or Deceptive Conduct*

For the purposes of deciding whether Citizens acted deceptively or unfairly, "the relevant conduct is the entirety of defendants' actions, not each action viewed in isolation." *Hannigan v. Bank of America, N.A.*, 48 F.Supp.3d 135, 142 (D. Mass. 2014). The Zielinskis have alleged that Citizens violated 93A in four respects, which were each addressed above: clerical errors or negligence, poor customer service, failure to timely review and respond to their requests for relief, and miscalculation of their rental income. In order to determine whether the Zielinskis have created a genuine dispute of material fact concerning whether Citizens' conduct was unfair or deceptive, I must consider the cumulative effect of all four categories of conduct. Nonetheless, even under the required cumulative analysis and considering the facts in the light most favorable to the nonmovants, the Zielinskis have not created a genuine dispute of material fact that the entirety of Citizens' conduct was unfair or deceptive.

     *6. Damages*

In addition to showing that a genuine dispute of material fact exists that a defendant's conduct constituted an unfair or deceptive trade practice, a 93A plaintiff "must allege and ultimately prove that . . . as a result [of the statutory violation], [she has] suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself." *Tyler v. Michael's Stores, Inc.*, 984 N.E.2d 737, 745-46 (Mass. 2013). The types of cognizable injuries under 93A are "a readily quantifiable loss of money or property;" "measurable emotional distress;" or "an invasion of the consumer's personal privacy causing injury or harm worth more than one penny." *Id.* at

746, n. 20.  There must be a "a causal connection between the deception and the loss and the that the loss was foreseeable as a result of the deception."  *Iannochino v. Ford Motor Co.*, 888 N.E.2d 879, 886 n. 12 (Mass. 2008).

Even if I found the Zielinskis had produced enough evidence to create a genuine dispute of material fact that they were the victims of a deceptive or unfair trade practice, they have not produced evidence of a separate, identifiable harm sufficient under *Tyler* to withstand summary judgment.

Non-Economic Damages*.*  The Zielinski's chief measure of damages is for Joanne Zielinski's claims for emotional distress, which "manifested in physical symptoms, including a total but temporary loss of vision in one eye, and a partial but permanent loss of vision in the same eye," causing her to incur past and future medical expenses.  (Pltf. SOMF ¶ 35).

A plaintiff must prove all the elements of intentional infliction of emotional distress in order to prevail on a 93A claim for emotional damages.  *Haddad v. Gonzalez*, 576 N.E.3d 658, 666 (Mass. 1991).  Those elements are: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe.' "  *Howell v. Enter. Publ'g Co.*, LLC, 455 Mass. 641, 672, 920 N.E.2d 1, 28 (2010) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976)) (additional citations and internal punctuation omitted).

Citizens is entitled to judgment as a matter of law as to law on Joanne Zielinski's non-economic damages for failure to produce any evidence that Citizens' conduct caused her injury;

that Citizens' conduct—subjecting her to hours of fruitless phone calls and the stress caused by
the foreclosure of her home—was extreme or outrageous; or that Citizens knew or should have
known that severe emotional distress was the likely result of its conduct.  To the contrary, the
Zielinskis admit that they failed to make their mortgage payments and do not dispute that they
were ineligible for mortgage assistance. The record shows that even if the loan assistance
application and short sale approval processes were slow or frustrating, it was not so outrageous
as to be considered utterly intolerable in a civilized society.  The only evidence of Citizens'
intent is in its letters to the Zielinskis and Joanne Zielinski's deposition testimony about being
unable to reach a knowledgeable human by phone to assist in her case.  No statement in the
letters or description of the quality or frequency of the calls lends itself to a finding that Citizens
knew or should have known its conduct would cause emotional distress, and the Zielinskis did
not take any depositions of Citizens employees who might have knowledge on the subject.

Furthermore, the Zielinskis offer no evidence beyond bare allegations that the stress of
this process caused Joanne Zielinski's central retinal vein occlusion.  Dr. Baker's letter noted that
there is a "known association" between hypertension with central retinal vein occlusions, and
that hypertension "can be related" to stress. (Docket No. 23-1).  He also noted that central retinal
vein occlusions have a higher incidence in individuals with glaucoma and diabetes, and also
listed less common causes, including that up to 45% can be idiopathic (of unknown cause).
However, he did not opine as to what caused Joanne Zielinski's retinal vein occlusion, whether
she had hypertension at the time of her injury, or whether any of the two common or two less
common causes for retinal vein occlusions listed in his letter applied to her.  Nor could Dr. Baker
offer such opinion if he were called to testify at trial, since he has not been disclosed as an expert
in the case.  While Joanne Zielinski might be able to credibly testify about her stress in 2015-

2016, there is no evidence linking her eye injury to that stress beyond Dr. Baker's attenuated and qualified claim that hypertension "can be related to" stress, and stress has a "known association" with retinal vein occlusions.

Economic Damages.  It is not precisely clear what damages the Zielinskis seek beyond the emotional distress and medical damages connected to Joanne Zielinski's eye condition.  In their opposition to the statement of material facts, the Zielinskis represent that "they are not claiming money damages directly related to losses from the sale of their home," yet in their brief opposing summary judgment they state that they "are also alleging financial losses, including medical expenses, an accrual of interest on their mortgage loans, and legal fees in connection with the short sale of their house."  (*Compare* Resp. to Dfts' SOMF ¶ 33 *with* Opposition at 12, Docket No. 24).

The Zielinskis have not offered sufficient evidence to create a dispute of material fact that Citizens' conduct during the second loss mitigation request or the short sale approval process was unfair or deceptive with the meaning of 93A and are not entitled to the accrual of interest on their loans and legal fees as damages that they legally accrued to resolve their outstanding mortgage debt.

Citizens' motion for summary judgment is ***granted*** as to Count I.

B.  Violation of CFPA as *Per Se* 93A Violation (Count II)

The Zielinskis allege that Citizens violated the Consumer Financial Protection Act ("CFPA"), which prohibits covered persons from "committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial

product or service." 12 U.S.C. § 5531(a).  Under 940 CMR 3.16(4), any violation of a federal consumer protection statue within the purview of ch. 93A, § 2 is a *per se* 93A violation.

Setting aside whether the evidence creates a genuine dispute that Citizens violated the CFPA, Citizens is entitled to judgment as a matter of law on Count II because the Zielinskis have not produced sufficient evidence to satisfy 93A's injury requirement under *Tyler*.  ". . . [T]he violation of an independent statute—such as the Code of Massachusetts Regulations—does not itself 'satisfy the injury requirement of c. 93A, § 9,' and hence, does not' 'automatically entitle[] the plaintiff to at least nominal damages and (attorney's fees)' under Chapter 93A."  *Shaulis v. Nordstrom*, 865 F.3d 1, 8-9 (1st Cir. 2017).   As discussed *supra*, Part IV.A.5, the Zielinskis have not satisfied 93A's injury requirement, and thus cannot recover through *per se* liability under the CFPA regardless of whether Citizens' conduct violated the federal statute.

Citizens' motion for summary judgment as to Count II is ***granted***.

C.  Violation of FDCPA and Massachusetts Debt Collection Regulations as *Per Se* 93A
    Violations (Count III)

The Zielinskis also allege that Citizens violated the Fair Debt Collection Practices Act ("FDCPA") and Massachusetts debt collection regulations, which are both *per se* violations of 93A.

1.  *FDCPA*

The FDCPA prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e).  "A violation of the FDCPA constitutes a per se violation of ch. 93A*." French v. Corporate Receivables, Inc.*, 489 402, 403 n. 1 (1st Cir. 2007).

Citizens has raised two standing issues as to the FDCPA.

First, Citizens' argument that the FDCPA's one-year statute of limitation applies to Count II's 93A *per se* claim is incorrect. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123-24 n. 16 (1st Cir. 2014) (rejecting defendant's argument that plaintiff's 93A claims grounded on FDCPA violations were untimely under the FDCPA's one-year statute of limitations because 93A's four-year limitations period applied).

Second is Citizens' argument that it is not a "debt collector" within the meaning of the FDCPA, which has merit. The FDCPA does not apply to "any person collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The Zielinskis protest that it is unclear whether the exemption applies because, as they describe in the Complaint, the mortgage loan and home equity loan changed hands on several occasions since their origination in 2003. (Comp. ¶¶7-12). The Complaint states that the Zielinskis believe that Citizens acquired ownership of the mortgage loan and home equity line of credit in 2015 or at some point after the 2008 Loan Modification Agreement. (¶¶ 11-12) ("At some point after the Modification Agreement was executed, Citizens One Home Loans ("Citizens One") took over the servicing of the First Mortgage. Citizens One is a division of Citizens Bank and was performing servicing duties for Citizens Bank which owned the Mortgage."). But in their response to Citizen's Statement of Material Facts, the Zielinskis admitted that Citizens owned the mortgage loan when their payments became delinquent during the period of time covered in the Complaint. (Dfts' SOMF ¶ 7) ("7. Plaintiffs defaulted on their loan obligations to Citizens under the 2008 Loan Modification. **Response:** Plaintiffs do not dispute that their mortgage payments were delinquent during the time period of time described in

the Complaint . . . ").  They are bound by that concession, and thus have not preserved any

dispute for trial as to the applicability of the debt collector exemption.

Citizens' motion for summary judgment is ***granted*** as to the FDCPA component of Count

III.

### 2.  *Massachusetts Debt Collection Regulations*

The Zielinskis also argue that Citizens' conduct violated Massachusetts Debt Collection

Regulations 209 CMR 18.16(8) and 940 CMR 7.07(8).  (Comp. ¶ 79).  209 CMR 18.16(8)

prohibits "communicating or threatening to communicate to any person credit information which

is known or which should be known to be false, including the failure to communicate that a

disputed debt is disputed."  940 CMR 7.07(8) prohibits "any false, deceptive, or misleading

representation, communication, or means in connection with the collection of any debt or to

obtain information concerning a debtor."

For the same reasons as Count II, the Zielinskis have failed to satisfy the injury

component of the 93A claim they seek to assert though these regulations.  There is insufficient

evidence to prove that Joanne Zielinski's emotional distress damages or the economic damages

arose from Citizens' conduct at issue in this case.

Citizens' motion for summary judgment is ***granted*** as to the Massachusetts Debt Collection

Regulations component of Count III.

### D.  Violation of HAMP Requirements and Guidelines as Per Se 93A Violations (Count IV)

The Home Affordable Modification Program ("HAMP") is a federal program which

incentivizes participating mortgage services to offer mortgage loan modifications to qualifying

homeowners to reduce foreclosures. "HAMP guidelines impose a series of detailed obligations

20

on participating servicers" which are collected in the HAMP Handbook and include "acknowledging receipt of the application in ten days and responding to it in thirty days, requiring specific financial documents depending upon the borrower's employment status, undertaking a series of loan modification steps with the goal of reducing the monthly mortgage payment ratio to 31%, calculating the NPV in accordance with certain parameters and including certain information in a denial notice to the borrowers." *Charest v. Fed. Natl. Mortg. Ass'n*, 9 F.Supp. 3d 114, 125 (D. Mass. 2014). The Zielinskis allege that Citizen's conduct violated several of the terms and conditions for loan servicers set out in the HAMP Handbook.

Citizens' argument that Count IV must be dismissed because HAMP does not provide for a private right of action is incorrect. "HAMP violations can give rise to a viable 93A claim if the activity would be independently actionable under Chapter 93A as unfair and deceptive" and "recovery is compatible with the objectives of enforcement mechanisms contained in the underlying statute." *Morris v. BAC Homes Loans Servicing, L.P.*, 775 F.Supp.2d 255, 256, 258-59, 261-62 (D. Mass. 2011). To prevail under 93A based on a HAMP violation, a plaintiff must prove that: 1) a participating servicer's conduct violated a HAMP rule or regulation; 2) the servicer's conduct was unfair or deceptive within the meaning of 93A; and 3) recovery under 93A would not be inconsistent with the enforcement objectives in the HAMP statute.

However, Count IV fails because even if the Zielinskis had shown that Citizen's conduct violated HAMP regulations, they have not provided enough evidence to create a genuine dispute of material fact that those violations rise to the level of "independently actionable conduct" under 93A. As discussed under my analysis of Count I, *see supra* Part IV.A, the Zielinski's independent 93A claim cannot withstand summary judgment. This means that they cannot recover for any HAMP violations alleged in their complaint.

This result is consistent with the cases the Zielinskis cite as examples where 93A claims based on HAMP violations survived motions to dismiss.  Multiple courts agree that "not every technical violation of HAMP should expose a servicer to Chapter 93A liability."  *Charest* at 125; *Morris v. BAC Home Loans Servicing*, L.P. 775 F.Supp. 2d at 260, 263; *Bean v. Bank of New York Mellon*, 2012 WL 4103913 at *8 (D. Mass. Sept. 12, 2012).  "Generally, courts have found that when ""defendants misrepresented to plaintiffs the status of their HAMP application, their rights under HAMP, or their eligibility for a permanent loan modification" such acts were "sufficiently unfair or deceptive" to impose 93A liability.""  *Stagikas v. Saxon Mortg. Services, Inc.*, 2013 WL 5373275 at *4-5 (D. Mass. Sep. 24, 2013) (citing *Markle v. HSCBC Mortg. Corp.*, 844 F.Supp.2d 172, 186 (D. Mass. 2011)).

The Zielinskis have named six HAMP requirements that Citizens violated, including the failure to maintain and track the documents that the Zielinskis submitted; failure to promptly notify the Zielinskis when it needed additional information; being knowledgeable about the Plaintiffs' financial situation; failure to maintain a toll free telephone number; failure to connect Joanne Zielinski to the specific Citizens' manager assigned to the Zielinski's applications for assistance; and failure to comply with various federal and state laws.  (Comp., ¶ 95).  However, there is no evidence in the record that Citizens' conduct on their HAMP application resulted in an erroneous denial, or that it made any misrepresentations to the Zielinskis about their HAMP eligibility or HAMP rights.  To the contrary, Citizens represented that it would evaluate their eligibility for HAMP and provided a detailed explanation of its refusal by letter on January 22, 2016.  The Zielinskis have provided no evidence to substantiate their allegation that Citizens miscalculated their rental income.  Even if I credit Joanne Zielinski's deposition testimony and the two fax cover sheets by assuming that Citizens was negligent in managing and tracking the

documents that the Zielinskis provided, Citizens was not remiss in asking them for the "missing" documentation, nor did it deny their application based on any false facts or "missing documentation."

Citizen's motion for summary judgment on Count IV is ***granted***.

## V. Conclusion

For the reasons set forth above, Citizen's motion for summary judgment is ***GRANTED***.

**SO ORDERED.**

>                                    */s/ Timothy S. Hillman*
>                                    **TIMOTHY S. HILLMAN**
>                                    **U.S. DISTRICT JUDGE**